UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMTECH TELECOMMUNICATIONS CORP. and TELECOMMUNICATION SYSTEMS, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> VIDEODOC TECHNOLOGIES, LTD., <br><br> Defendant. | Case No. 1:19-cv-6694 <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Comtech Telecommunications Corp. ("Comtech") and Telecommunication Systems, Inc. ("TSYS" and, together with Comtech, "Plaintiffs"), through their undersigned attorneys, Lupkin PLLC, as and for their Complaint against defendant VideoDoc Technologies Ltd. ("VideoDoc"), hereby allege upon knowledge with respect to their own acts and status, and upon information and belief with respect to all other matters, as follows:

## NATURE OF THE ACTION

1.      This action is necessitated by VideoDoc's continued efforts to retain the benefits of three contracts with Plaintiffs while refusing to perform its own obligations under those agreements.

2.      For over four years, TSYS licensed its VirtuMedix® software platform to VideoDoc and provided attendant services and support pursuant to a 2015 partner agreement and an ancillary 2017 agreement. Earlier this year, Plaintiffs notified their customers—including VideoDoc—that VirtuMedix® had reached its "end of life" and that their agreements with Plaintiffs would expire in 90 days.

1

3.      VideoDoc challenged the termination and tried to coerce Plaintiffs into giving VideoDoc perpetual access to the VirtuMedix® platform for far less than it is worth. VideoDoc eventually filed a lawsuit in which Plaintiffs asserted counterclaims. Plaintiffs' counterclaims included tort and contract claims arising out of VideoDoc's recently-discovered misappropriation of Plaintiffs' confidential information and intellectual property.

4.      On June 26, 2019, the parties executed a settlement agreement pursuant to which VideoDoc agreed, *inter alia*, to pay Plaintiffs approximately $400,000 plus an annual $50,000 fee in perpetuity. But, once Plaintiffs performed their own obligations under that agreement (including dismissal of their counterclaims), VideoDoc repudiated the settlement agreement and cut off virtually all communication with Plaintiffs.

5.      As of the date of this Complaint, VideoDoc has not paid for any services rendered by Plaintiffs since December 1, 2018 and has not made any of the payments required by the settlement agreement. Plaintiffs bring this action to recover the consideration for which they bargained in their three contracts with VideoDoc, in excess of $1 million exclusive of interest, penalties, costs, expenses, and attorneys' fees.

## PARTIES

6.      Plaintiff Comtech is a Delaware corporation with its principal place of business in Melville, New York. Founded in 1967 as Comtech Laboratories, Comtech designs, develops, produces, and markets innovative products, systems, and services for advanced communications solutions. The Company sells products to a diverse customer base in the global commercial and government communications markets. Comtech acquired TSYS in 2016.

7.      TSYS is a Maryland corporation with its principal place of business in Annapolis, Maryland. It is a wholly-owned subsidiary of Comtech. TSYS is a world leader in highly reliable

and secure mobile communication technology. Millions of consumers around the world use TSYS wireless apps as a fundamental part of their daily lives. Government agencies utilize TSYS cybersecurity and professional services and highly secure deployable satellite solutions for mission-critical communications.

8.      On information and belief, VideoDoc is a private limited liability company incorporated in England and Wales, with a principal place of business in London, England.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) because VideoDoc is a citizen of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     This Court has personal jurisdiction over VideoDoc because VideoDoc has consented to such jurisdiction; the Licenses (as defined below) provide that "the Parties irrevocably agree to submit to the jurisdiction of the federal and state courts located in New York, New York State."

11.     This Court also has jurisdiction over VideoDoc because Plaintiffs' claims for breach of the Settlement Agreement (as defined below) arise out of and relate to activities VideoDoc purposefully directed at a resident of New York State.

12.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) and/or (3). A substantial part of the events or omissions giving rise to the claims herein, including the filing and prosecution of the prior action and the negotiation, drafting, execution, and (partial) performance of the settlement agreement, occurred in this judicial district.

3

## FACTUAL ALLEGATIONS

13.     In 2015, VideoDoc entered into an agreement to license Plaintiffs' (then TSYS's) VirtuMedix® technology (the VirtuMedix® Provider Partner Agreement, hereinafter the "Platform License"). VirtuMedix® is a cloud-based telemedicine platform that enables virtual encounters among clinicians, caregivers, patients, and family members using smartphones or tablets.

14.     The Platform License gave VideoDoc the exclusive right to utilize the VirtuMedix® platform in the United Kingdom and the Republic of Ireland and entitled it to certain related services from TSYS. The initial term of the Platform License was for three years, after which it was renewable in one-year increments. Either party could terminate for convenience on 90 days' written notice.

15.     On January 23, 2019, Plaintiffs notified VideoDoc, along with their other VirtuMedix® customers, that the VirtuMedix® platform had reached its "end of life" and that the Platform License and an ancillary agreement entered into in 2017—the VirtuMedix® API License Agreement (the "API License")—would expire on April 26, 2019. The Platform License and API License are referred to collectively herein as the "Licenses".

16.     Instead of taking appropriate and responsible steps to migrate its data from the VirtuMedix® platform to a new platform, and working collaboratively with Plaintiffs to effectuate an orderly transition, VideoDoc engaged in a pattern of conduct calculated to coerce Plaintiffs to either (a) rescind the termination of the Licenses or (b) sell the VirtuMedix® platform to VideoDoc at a price well below its value.

17.     As part of its campaign of extortionate pressure and irresponsible deflection of responsibility, VideoDoc:

4

- challenged Plaintiffs' clear right to terminate the Licenses by advancing incorrect and untenable interpretations of the Licenses;

- pressured Plaintiffs to perform certain security testing (a "penetration test"), which Plaintiffs were not required to perform under the Licenses, at an economic loss to Plaintiffs;

- failed and improperly refused to pay fees due to Plaintiffs under the Licenses;

- attempted to engage third parties to reverse engineer Plaintiffs' proprietary software, in violation of the Licenses; and

- breached the API License by sharing Plaintiffs' confidential information with at least one third party.

18.     On April 18, 2019, VideoDoc filed a complaint against Plaintiffs in the Southern District of New York (the "Original Action").[1] VideoDoc's complaint sought, *inter alia*, to compel Plaintiffs to (a) continue to perform under the expiring Licenses indefinitely and (b) perform the requested penetration test—and any such testing requested in the future—for a fraction of its cost. *See* Original Action ECF No. 1.

19.     Even after VideoDoc filed suit, Plaintiffs tried to negotiate a reasonable resolution. But VideoDoc used the threat of litigation as another pressure-point intended to extract unreasonable concessions from Plaintiffs. On June 6, 2019, Plaintiffs called VideoDoc's bluff and filed an answer and counterclaims. *See* Original Action ECF No. 15 (the "Counterclaims").

---

[1] *VideoDoc Technologies, LTD v. Comtech Telecommunications Corp. et al.*, Case No. 1:19-cv-0382-LTS-SN.

20.     Plaintiffs' Counterclaims were based, in part, on VideoDoc's recently-discovered misappropriation of Plaintiffs' confidential and proprietary information in an impermissible effort to reverse-engineer the VirtuMedix® platform. *Id.*

21.     At the same time, Plaintiffs sent a second notice of termination, effectively extending the terms of the Licenses until September 4, 2019.

22.     Faced with a "live" litigation and meritorious counterclaims against it, VideoDoc suddenly became more reasonable—or so it appeared.

23.     Throughout the settlement negotiations, VideoDoc claimed that June 24, 2019 was a "drop-dead" date after which, if the penetration test were not performed, VideoDoc would be at risk of "[going] out of business."

24.     Taking VideoDoc at its word, Plaintiffs worked swiftly to negotiate a "short-form" agreement that—while fully binding and enforceable—contemplated the subsequent execution of a more detailed agreement (the "Detailed Settlement Agreement").

25.     On June 21, 2019, the parties agreed on the terms of a settlement pursuant to which, *inter alia*, VideoDoc promised to pay Plaintiffs:

- $79,815 in unpaid and overdue fees owed under the Licenses;

- $25,000 for services necessary to conduct the penetration test;

- $250,000 for continuation of services under the Licenses through February 14, 2020; and

- $50,000 per year, in perpetuity, for a license to certain intellectual property.

26.     VideoDoc represented to Plaintiffs that it would make the $79,815 payment immediately and requested wire transfer instructions, which Plaintiffs immediately provided.

6

27.     On June 24, 2019, the supposed drop-dead date for the penetration test, Plaintiffs had performed the work necessary on their end and provided VideoDoc with the information necessary for VideoDoc to perform that test. But VideoDoc did not take the necessary steps under the settlement agreement to move forward with the test.

28.     On June 26, 2019, when the parties executed the Settlement Agreement, VideoDoc still had not made any payments, nor had it moved forward with the penetration test.

29.     On July 1, 2019, as required by the Settlement Agreement, the parties filed a stipulation dismissing all claims and counterclaims asserted in the Original Action with prejudice. On July 2, 2019, U.S. District Judge Laura Swain so-ordered the stipulation. Original Action ECF No. 22 (the "Dismissal Order").

30.     On the day the Dismissal Order was entered, VideoDoc still had not made any of the payments required by the Settlement Agreement—nor had it started the penetration test that supposedly needed to have been completed over a week earlier.

31.     Also, notwithstanding the Settlement Agreement's requirement that the parties work together to draft and execute the Detailed Settlement Agreement, VideoDoc had made no effort to discuss or draft the Detailed Settlement Agreement, nor did it respond to Plaintiffs' requests to discuss the Detailed Settlement Agreement.

32.     To the contrary, once Plaintiffs had performed their part of the penetration test and dismissed their claims against VideoDoc, VideoDoc effectively ceased all communication with Plaintiffs.

33.     On July 8, 2019, Plaintiffs gave VideoDoc written notice of its breaches of the Settlement Agreement and advised VideoDoc, in part, as follows:

> [U]ntil VideoDoc pays the arrearage and engages in good-faith discussions regarding the Detailed Settlement Agreement, Comtech is excused from its

7

performance under the Settlement Agreement, including Paragraphs 2 (services attendant to the penetration test), 3 (services under the 2015 and 2017 agreements), and 7 (continued API license). If the foregoing defaults are not cured on or before Wednesday, July 10, 2019, [Plaintiffs] will take any and all appropriate actions, including a lawsuit for breach of the Settlement Agreement.

34.     VideoDoc still made no payments and continued to ignore Plaintiffs' efforts to discuss the Detailed Settlement Agreement.

35.     On July 18, 2019, after taking steps to ensure that VideoDoc had uninterrupted access to its data, Plaintiffs (1) gave VideoDoc notice of termination of the Licenses, effective immediately, for failure to pay fees; (2) cut off services to VideoDoc under section 11.5 of the Platform License and section 6.5 of the API License; and (3) filed this lawsuit.

36.     It has become clear from VideoDoc's conduct (or lack thereof) that VideoDoc did not enter into the Settlement Agreement in good faith. Rather, VideoDoc used the apparently manufactured urgency of the June 24, 2019 date for the penetration test to rush a settlement that would take Plaintiffs' Counterclaims off the table—never intending to hold up its end of the bargain once that pressure was off. Thus, once again, Plaintiffs are forced to seek the aid of the Court to enforce their rights against VideoDoc.

## <u>COUNT I – BREACH OF LICENSES</u>

37.     Plaintiffs repeat and restate the allegations contained in paragraphs 1 through 36 as if fully set forth herein.

38.     Despite repeated demands for payment, VideoDoc has failed to pay fees due under the Licenses for services dating back to December 1, 2018. VideoDoc did not pay those fees within the required 30 days, or the 30-day cure period. Failure to cure nonpayment within 30 days is grounds for immediate termination of the Licenses. *See* Platform License § 11; API License § 6.

39.     Accordingly, on July 18, 2019, Plaintiffs terminated the Licenses.

40.     Upon termination for failure to pay, VideoDoc must immediately pay "any outstanding sums which may be owing" under the Licenses. Platform License § 20.4.3; API License § 13.4.3. As reflected in the invoices Plaintiffs sent to VideoDoc upon termination of the Licenses, VideoDoc owed Plaintiffs $98,029.56 in unpaid license and consultation fees as of the date of termination.

41.     VideoDoc's failure to pay Plaintiffs $98,029.56 on or before July 18, 2019 is a material breach of the Licenses.

42.     Pursuant to section 11.5 of the Platform License and section 6.5 of the API License, Plaintiffs "shall be entitled to recover all costs of collecting all unpaid amounts due [under the Licenses] following a Failure to Pay, including reasonable attorney's fees and other collection costs."

43.     As a direct result of VideoDoc's breach, Plaintiffs have suffered monetary damages to be determined at trial, but in no event less than $98,029.56.

## COUNT II – BREACH OF SETTLEMENT AGREEMENT (ARREARAGE)

44.     Plaintiffs repeat and restate the allegations contained in paragraphs 1 through 43 as if fully set forth herein.

45.     Paragraph 5 of the Settlement Agreement requires VideoDoc to pay Plaintiffs $79,815 in outstanding and unpaid fees.

46.     VideoDoc has not paid Plaintiffs the $79,815 due under the Settlement Agreement, nor has it responded to Plaintiffs' demands for payment.

47.     VideoDoc's failure to pay Plaintiffs $79,815 is a material breach of paragraph 5 of the Settlement Agreement.

9

48.     As a direct result of VideoDoc's breach, Plaintiffs have suffered monetary damages to be determined at trial, but in no event less than $79,815.

## COUNT III – BREACH OF SETTLEMENT AGREEMENT
## (DETAILED SETTLEMENT AGREEMENT)

49.     Plaintiffs repeat and restate the allegations contained in paragraphs 1 through 48 as if fully set forth herein.

50.     Paragraph 9 of the Settlement Agreement requires VideoDoc to "work together [with Plaintiffs] to draft and execute a more detailed settlement agreement…."

51.     Paragraph 4 of the Settlement Agreement requires VideoDoc to pay Plaintiffs $250,000 immediately upon execution of the Detailed Settlement Agreement.

52.     Paragraph 7 of the Settlement Agreement requires VideoDoc to pay Plaintiffs $50,000 per year, in perpetuity, in exchange for a license to certain intellectual property, the specific terms of which were to be set forth in the Detailed Settlement Agreement.

53.     VideoDoc has not worked together with Plaintiffs to draft and execute a Detailed Settlement Agreement and has ignored Plaintiffs' efforts to engage with VideoDoc on that issue.

54.     VideoDoc's willful violation of Paragraph 9 of the Settlement Agreement has prevented the execution of the Detailed Settlement Agreement and, accordingly, the payment to Plaintiffs of the $250,000 due under paragraph 4 and the $50,000 annual payments due under paragraph 7.

55.     As a direct result of VideoDoc's breach, Plaintiffs have suffered monetary damages to be determined at trial, but in no event less than $1 million.

## COUNT IV – ANTICIPATORY BREACH OF SETTLEMENT AGREEMENT

56.     Plaintiffs repeat and restate the allegations contained in paragraphs 1 through 55 as if fully set forth herein.

57.     By knowingly and willfully refusing to perform any of its obligations under the Settlement Agreement, VideoDoc has unequivocally indicated its intention not to perform its obligations under the Settlement Agreement.

58.     Plaintiffs have sought assurances of performance from VideoDoc, including on July 8, 2019, but VideoDoc has provided no such assurances.

59.     As a direct result of VideoDoc's repudiation of the Settlement Agreement, Plaintiffs have suffered damages to be determined at trial, but in no event less than $1 million.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that this Court enter judgment, for Plaintiffs and against

VideoDoc, as follows:

(a)  awarding Plaintiffs damages in an amount to be determined at trial;

(b)  awarding Plaintiffs prejudgment interest, costs, disbursements, and attorneys' fees;

   and

(c)  granting Plaintiffs such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated:    New York, New York
          July 18, 2019

                              Respectfully submitted,

                              **LUPKIN PLLC**



                              By: _____
                                   Michael B. Smith (MS 3281)
                                   Jonathan D. Lupkin (JL 0792)

                              80 Broad Street, Suite 1301
                              New York, NY 10004
                              Tel: (646) 367-2771
                              Fax: (646) 219-4870
                              msmith@lupkinpllc.com
                              jlupkin@lupkinpllc.com

                              *Counsel for Plaintiffs*
                              *Comtech Telecommunications Corp. and*
                              *Telecommunication Systems, Inc.*


4815-9192-2844, v. 7